

**FILED**
October 05, 2022 04:14 PM
SX-2018-CV-00048
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| WILLIAM DESMOND AND TRACY DESMOND, <br><br> Plaintiffs, <br><br> v. <br><br> VIRGIN ISLANDS WATER AND POWER AUTHORITY and HAUGLAND ENERGY GROUP, LLC, <br><br> Defendants. | **No. SX-2018-CV-00048** <br><br> ACTION FOR DAMAGES <br><br> JURY TRIAL DEMANDED <br><br> <u>2022 VI SUPER 85</u> |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Haugland Energy Group, LLC's ("Haugland") Motion for Summary Judgment ("Motion"), filed December 1, 2021. Plaintiffs' Opposition was filed January 31, 2022, and Haugland's Reply was filed March 11, 2022. For the reasons explained below, Haugland's Motion will be denied.

### BACKGROUND

On December 8, 2017, Plaintiff William Desmond ("Desmond"), a journeyman electrician, was supervising a crew for James Adams Electric, LLC ("Adams Electric") at a private residence. The crew was getting a generator running and preparing the residence, Plot 135 Estate Shoys, St. Croix, for restoration of electric power following Hurricane Maria. Deposition of William Desmond ("Desmond Dep.") at 31, 96; Affirmation of James Adams ("Adams Affirmation"), ¶ 5.[1]

Upon arrival that day, Desmond observed that there was no power at the guard station or in "other portions of Estate Shoys." Plaintiff's Statement of Facts ("Opp. SOF"), ¶ 38. At Plot 135, Desmond "observed two telephone poles broken in half on the street and numerous meters 'hanging and flapping all over the place' in the area they were going to work." *Id.* at ¶ 39 (citing Desmond Dep. at 32; Affirmation of Aldrin Clint Cherry ("Cherry Affirmation"); Affirmation of Michael Le Blanc ("Le Blanc Affirmation")). Prior to beginning work, Desmond and another Adams Electric employee, Clint Cherry ("Cherry"), confirmed by voltage meters that no electricity was flowing to the lines on which they would be working. *Id.* at ¶¶ 40-44. In his deposition, Desmond stated that "if there had been any chance of electricity flowing anywhere in the…area," he would have had someone reach out to WAPA. *Id.* at ¶¶ 54-55 (citing Desmond Dep. at 61, 182).

---

[1] Only those facts relevant to the disposition of the Motion are addressed herein, treated in the light most favorable to the non-moving party. *Basic Servs., Inc. v. Gov't of the V.I.*, 71 V.I. 652, 659 (V.I. 2019).

He further stated that he was never told to "turn off the power at the pole" because there was no power that needed to be turned off. *Id.* at ¶ 55 (citing Adams Affirmation; Le Blanc Affirmation).[2]

Haugland had been contracted by WAPA "to restore power, perform debris cleanup, and construct the new composite pole project" after Hurricanes Maria and Irma in 2017, and was responsible for "all of the restoration work with regard to Feeder 2A in St. Croix," which services the east side of the island, including the Estate Shoys neighborhood. Opp. SOF at ¶¶ 6, 11-12, 100.[3] Under WAPA's protocol, if a house had a damaged meter base or weatherhead, "that customer was not permitted to be reenergized." *Id.* at ¶ 20. Further, Haugland "had a protocol where they had to run trucks up and down the area of reenergization" prior to reenergizing any area, and if they came across someone working on a meter base in an area ready to be energized during the pre-energization sweep, "all work would be stopped until the situation was rectified." *Id.* at ¶¶ 56, 77.

While performing repair work on the day in question, Desmond "never saw any Haugland Energy trucks or personnel in the Estate Shoys area." Opp. SOF at ¶ 56. However, while Desmond and Cherry were repairing the meter base at 135 Estate Shoys, "the lines were unexpectedly energized" and, as a result, Desmond was electrocuted. *Id.* at ¶¶ 58-61. Following the injury, "Clint ran down and found a Haugland Energy employee who came up to 135 Estate Shoys and apologized for the incident." *Id.* at ¶ 63. The unidentified employee "told Desmond that due to what WAPA had showed them on their maps, that the line they were energizing was not the line they meant to energize and the homes on the street with 135 Estate Shoys were not in fact ready to be energized." *Id.* at ¶ 64 (citing Desmond Dep. at 43; Cherry Affirmation). The employee also told Desmond that "Haugland never sent trucks through the 135 Estate Shoys area that day because the area was never supposed to be energized and Haugland immediately turned off the power because they realized it was a hazard." *Id.* at ¶ 68 (Desmond Dep. at 51). "[James] Adams testified that he saw a bucket truck from Haugland Energy in the Shoys neighborhood on December 8, 2017, but not near 135 Estate Shoys." *Id.* at ¶ 82.

According to Plaintiffs, some of the mapping information WAPA gave Haugland "was outdated as far as specific pole locations." *Id.* at ¶ 88 (citing Haugland Dep. at 29).[4] After

---

[2] "I did not tell William Desmond to contact WAPA to turn off the power at the pole nor did I do so because there was NO POWER to the home at 135 Estate Shoys so there was no need to have WAPA 'turn off the power at the pole.'" Adams Affirmation at ¶ 7 (emphasis in original).

"There would have been no need to call WAPA prior to doing work on the home at 135 Estate Shoys on December 8, 2017 to tell them to disconnect the power at the pole, because there was no power and the area was not yet ready for reenergization." Le Blanc Affirmation at ¶ 7.

[3] *See* 30(b)(6) Deposition of Haugland, by Anthony Jalbert ("Haugland Dep.") at 13; 30(b)(6) Deposition of WAPA, by Niel Vanterpool ("WAPA Dep.") at 28-9.

[4] Anthony Jalbert's full response to the question posed paints a different picture than that urged by Plaintiffs. The relevant part of the exchange was as follows:

Q: Now, did Haugland Energy ever have an issue with inaccurate coordinates being given by WAPA to Haugland Energy?

Desmond's injury and conversation with the unidentified Haugland employee, Desmond left the job and "the power had turned back off" and no power was flowing to the lines around 135 Estate Shoys. *Id.* at ¶ 91-92. On his way home, Desmond saw some Haugland line trucks at Ziggy's Island Market, and he stopped to tell them: "I just got electrocuted off of one of your Haugland guys." Opp. SOF at ¶¶ 94-96.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.I. R. Civ. P. 56(a). When considering a summary judgment motion, a court should view the evidence in the light most favorable to the non-moving party. *Basic Servs., Inc.*, 71 V.I. at 659 (citing *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014)). "Once the moving party has identified the portions of the record that demonstrate no issue of material fact, 'the burden shifts to the non-moving party to present affirmative evidence from which a jury might reasonably return a verdict in [their] favor.'" *Rymer v. Kmart Corp.*, 68 V.I. 571, 576 (quoting *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013)).

The court "must take the non-moving party's conflicting allegations as true 'if supported by proper proofs.'" *Kennedy Funding, Inc. v. GB Props., Ltd.*, 73 V.I. 425, 431 (V.I. 2020) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)). The evidence the non-moving party may rely on to show a genuine dispute for trial "may be direct or circumstantial, 'but the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way.'" *Id.* at 431 (quoting *Saldana v. Kmart Corp.*, 260 F.3d 228, 234 (3d Cir. 2001)). Thus, to survive the summary judgment stage, the non-moving party's evidence must "amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232.

An affidavit in support or opposition has been found by the Virgin Islands Supreme Court to be "an appropriate vehicle to establish a fact for summary judgment purposes," but "the affidavit must set forth facts, not conclusory statements." *Basic Servs., Inc.*, 71 V.I. at 664 (internal citations and quotation marks omitted). "When an affidavit sets forth 'facts' that are unsupported by the documents in the summary judgment evidence, the affidavit is conclusory." *Id.* (internal citations omitted).

## DISCUSSION

In support of its Motion, Haugland argues that Plaintiffs' negligence claims "point to no evidence that Haugland either (1) owed a duty to notify [Desmond] prior to energizing the St. Croix power grid; or (2) is the entity which in fact did energize the wire [Desmond] was holding

---

A: I would say no. Uhm, well, let me rephrase that. Some of their information was a little outdated as far as the pole – specific pole locations. **But in terms of direction of feeders and lines, those were – those were pretty on point.**
Haugland Dep. at 29 (emphasis added).

when he was shocked." As such, Haugland argues that Plaintiffs' "negligence claim fails for both lack of duty and lack of proximate cause." Motion, at 1, 13.[5] [6]

Haugland characterizes Plaintiffs' position on Haugland's duty to Desmond—a duty to go "door to door to warn everyone outside that the power was going to be turned on in the area"—as a "conclusory allegation" for which "there is no factual basis" that can be established. *Id.* at 14. Conversely, Haugland argues that Desmond had a duty "to contact WAPA and request a disconnect prior to working on any wires above the meter box," a duty Haugland asserts Desmond breached. *Id.* at 14, 18. As to causation, Haugland argues that "record evidence...show[s] [Haugland] was not located in, or doing work on, any of the power lines connected to the Shoys neighborhood where [] Desmond claims he was shocked." *Id.* at 1. Haugland further assets that its only connection to the events in issue is that one of its line crews just happened to be the first one located after the incident. *Id.* at 21.

Plaintiffs oppose summary judgment, arguing that genuine issues of material fact exist as to both Haugland's compliance with the duty owed and as to causation. Plaintiffs claim that Haugland "owed Desmond a duty of care to properly (1) inspect the meter base at 135 Estate Shoys for energization eligibility; (2) isolate the service drop to 135 Estate Shoys due to its meter base being damaged and being ineligible for energization, in preparation for energization of the remainder of the Estate Shoys neighborhood; and (3) to perform the required Haugland Energey and WAPA protocol, circuit sweep of the Estate Shoys area prior to energization of that area." Opposition, at 6. Plaintiffs argue there are disputed issues of fact as to whether Haugland breached such duty. Plaintiffs argue further that whether Haugland's breach of a duty to perform a necessary circuit sweep, inspect the meter base, and isolate the service drop prior to energizing Estate Shoys was a proximate cause of Desmond's injuries is a genuine issue of material fact, which must be determined by the fact finder at trial. *Id.* at 5-6, 18.

In reply, Haugland argues that Plaintiffs have "fail[ed] to cite any record evidence which would plausibly suggest that Haugland took any action which caused electricity to power the service drop at 135 Estate Shoys," injuring Desmond. Reply, at 1. Haugland also argues that

---

[5] The foundational elements to make out a claim of negligence in the Virgin Islands are: (1) a legal duty of care to the plaintiff; (2) a breach of that duty by the defendant; (3) which constitutes the factual and legal cause of; (4) damages to the plaintiff. *Machado*, 61 V.I. at 380. Whether a defendant breached a legal duty is a question of fact, but the existence and nature of a legal duty are generally questions of law to be determined by the court. *Robbins v. Port of Sale, Inc.*, 2018 V.I. LEXIS 110, *8 (V.I. Super. Oct. 10, 2018) (citing *Sealey-Christian v. Sunny Isle Shopping Ctr., Inc.*, 52 V.I. 410, 420 (V.I. 2009)) (other citations omitted). "Although foreseeability is implicated to some degree in every element of negligence, each element requires a distinct and separate analysis." *Aubain v. Kazi Foods, Inc.*, 70 V.I. 943, 950 (V.I. 2019) (internal citations omitted). Haugland's Motion challenges only the issues of duty and causation, and this analysis is similarly focused.

[6] Haugland further argues that Tracy Desmond's loss of consortium claim, as "a derivative claim," cannot proceed absent a viable tort claim, and that since summary judgment is appropriate as to Desmond's negligence claims, the loss of consortium claim also fails. Motion, at 22-3. Plaintiffs respond that the existence of genuine issues of material fact precluding summary judgment on the negligence claim also requires denial of the Motion as to the derivative loss of consortium claim. Plaintiff's Opposition to Summary Judgment Motion ("Opposition"), 19.

Plaintiffs rely on speculation that Haugland took action that caused Desmond's injuries, "unsupported by any admissible evidence." *Id.* at 1-2. Specifically, Haugland argues that the facts upon which Plaintiffs rely are inadmissible hearsay that do not qualify as agent admissions under Virgin Islands Rule of Evidence 801(d)(2)[7] or any other exception to the hearsay rule, and thus cannot be considered for purposes of summary judgment.[8] *Id.* at 10.

The Court first considers what duty, if any, Defendant Haugland owed to Plaintiffs. The question whether Haugland's conduct conformed with the standard of conduct required by a duty is a question of fact, but the question whether a duty actually existed is a question of law, generally decided by the court. *See Robbins*, 2018 V.I. LEXIS at *8-9. In discerning whether a duty exists a court must consider "(1) the reasonable foreseeability of the injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on defendant." *Aubain v. Kazi Foods*, 70 V.I. at 950 (citation omitted); *see also Service v. Isidor Paiewonsky, Associates, Inc.*, 2022 VI SUPER 8U, ¶ 12 (V.I. Super 2022). The Virgin Islands Supreme Court has recognized that "foreseeability permeates every element of a

---

[7] (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay: ...

> (2) An Opposing Party's Statement. The statement is offered against an opposing party and:
>> (A) was made by the party in an individual or representative capacity;
>> (B) is one the party manifested that it adopted or believed to be true;
>> (C) was made by a person whom the party authorized to make a statement on the subject;
>> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.
>
> The statement must be considered but does not by itself establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E).

[8] The statements upon which Plaintiffs rely are set out in Opp. SOF ¶¶ 63-4 and 66-70, as follows:

> 63. After the lines were energized and Desmond was electrocuted, Clint ran down and found a Haugland Energy employee who came up to 135 Estate Shoys and apologized for the incident.
>
> 64. The Haugland Energy employee told Desmond that due to what WAPA had showed them on their maps, that the line they were energizing was not the line they meant to energize and the homes on the street with 135 Estate Shoys were not in fact ready to be energized and arcing was happening.
>
> 66. The Haugland employee showed Desmond a map that WAPA had given him showing energization work that was being done approximately three blocks away and that the area that Desmond was working in should have never been energized, which the Haugland employee told Desmond was due to the fact that the 135 Estate Shoys line had been looped onto the area that Haugland Energy was currently were [sic] working on, unbeknownst to them.
>
> 67. Desmond was shown a digital map on an iPad of the Shoys area that showed what Haugland was energizing, and the map showed the 135 Estate Shoys area in a different circuit.
>
> 68. Haugland never sent trucks through the 135 Estate Shoys area that day because the area was never supposed to be energized and Haugland immediately turned off the power because they realized it was a hazard.
>
> 69. The Haugland employee further told Desmond that Haugland was supposed to send cars up and down any area to be reenergized and the reason they didn't send anyone was because Haugland had not planned on reenergizing that area from what WAPA showed them on the iPad schematic.
>
> 70. The Haugland crew told [Cherry] that they were aware that an individual was electrocuted and were surprised as power was not supposed to be on in the area of 135 Estate Shoys and the crew then sent someone to go to 135 Estate Shoys. (internal citations omitted).

negligence claim." *Aubain*, 70 V.I. at 949. Regarding a defendant's duty to a plaintiff, foreseeability is "the touchstone of the quality of an act as negligence, the most important test in determining [the existence of] duty." *Id.* (citing *Renslow v. Mennonite Hosp.*, 367 N.E.2d 1250, 1258 (Ill. 1977)).

In this case, the record and common sense indicate that WAPA and Haugland were aware of a foreseeable risk of harm to persons exposed to electrical lines when those lines became energized in a particular geographic area. WAPA's protocol prohibited any house with a damaged meter base or weatherhead from being reenergized. Opp. SOF, at ¶ 20.[9] Prior to reenergizing an area, Haugland had trucks run up and down the area to assure it was ready to be reenergized. *Id.* at ¶ 53.[10] Haugland's safety observer testified that all work would be stopped if, during the inspection sweep of an area to be reenergized, someone was found working on a meter base in the area. *Id.* at ¶ 77.[11]

The Court finds that Haugland had a duty of reasonable care to prevent foreseeable harm during the process of reenergizing the power lines. There is a foreseeability of injury in that process, and a likelihood of injury if done without reasonable care. The burden to guard against such injury is minimal, as are the consequences of placing that burden on Haugland. It is not necessary to find that, before energizing a particular area, Haugland had the specific duty to drive throughout a neighborhood or to go door-to-door to inspect the meter box and weatherhead on every house. Suffice it to say, Haugland had a duty of reasonable care to sufficiently inspect an area prior to reenergization to assure that there was no foreseeable danger of harm to any persons working on or in close proximity to the power lines to be energized. Whether Haugland's conduct at the time of the incident in issue conformed to its duty is a question of fact not now before the Court, which makes no findings about what specific conduct would be deemed sufficient to meet that duty of reasonable care.[12]

Having found that a duty exists, the Court next considers the element of causation. Causation has two parts, "cause in fact and legal causation, which is often referred to as proximate cause." *Brady v. Cintron*, 55 V.I. 802, 823 (V.I. 2011) (quoting *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 73 (3d Cir. 1996)) (internal quotation marks omitted). "In order for the negligent act to be regarded as the cause in fact of the injury, it must be shown that the injury would not have occurred but for the act." *Id.* at 823-24 (citing *Fedorczyk*, 82 F.3d at 73).

---

[9] "So there couldn't be any visible damage to the roof of the service location, and there couldn't be any visible damage to the weatherhead or meter box where the service drops would be reconnected to. So based on the contractor's assessment, if they saw that any one of those conditions were questionable, then they should not reconnect that service location." WAPA Dep. at 35.

[10] "Haugland Energy's protocol was to have a pickup truck with a foreman driving around an area prior to energization to ensure that everything would be ready for energization prior to doing so." Adams Affirmation at ¶ 9.

[11] If someone was working on one of the meter bases during the inspection prior to reenergization, "[t]he work would all be stopped until that situation was rectified." Deposition of James Milton DeBoer ("DeBoer Dep.") at 22-23.

[12] Plaintiffs repeatedly argue that Haugland was required to perform according to "WAPA protocol." However, WAPA's internal procedures do not necessarily equate with the legal duty of reasonable care owed to Plaintiffs by Haugland. Ultimately, the finder of fact will determine whether Haugland's conduct met its duty of reasonable care.

"Proximate cause is established where the party who bears the burden shows that 'an original act is wrongful or negligent and in a natural and continuous sequence produces a result which would not have taken place without the act.'" *Miller v. V.I. Wheel Estate, LLC*, 75 V.I. 331, 337 (V.I. 2021) (citation omitted).

The parties agree that the only evidence presented as to causation is contained in Desmond's Deposition and Cherry's Affirmation, both of which rely on statements and admissions allegedly made by an unknown Haugland employee. Opp. SOF, at ¶¶ 63-70 (*see* n.7, *supra*); Reply. While Desmond's deposition testimony and Cherry's Affirmation are "appropriate vehicle[s] to establish a fact for summary judgment purposes," they "must present actual evidence showing a genuine issue for trial." *Basic Servs.*, 71 V.I. at 664; *Williams*, 50 V.I. at 194. Actual evidence presented to counter a motion for summary judgment must be admissible evidence upon which a reasonable jury may rely. "As a general rule, inadmissible hearsay may not be used to support or defeat a motion for summary judgment." *Bertrand v. Mystic Granite & Marble, Inc.*, 63 V.I. 772, 782 (V.I. 2015) (citation omitted).

Haugland argues that the statements of the unknown Haugland employee are inadmissible hearsay, insufficient to defeat summary judgment. Curiously, Plaintiffs' Opposition does not explicitly address the admissibility of these statements at all. As the statements of the unknown Haugland employee appear to be hearsay—out of court statements offered for the truth of the matters asserted—they are inadmissible unless they are either outside the definition of hearsay or subject to an exception to the hearsay rule. The Court concurs with Haugland that the only means by which the proffered statements may be admissible is if they are deemed outside the definition of hearsay as an opposing party's statement. *See* V.I. R. Evid. 801(d)(2)(D) ("[a] statement...is not hearsay... [that is] offered against an opposing party and was made by the party's agent or employee on a matter within the scope of that relationship and while it existed").

Other courts have considered whether an unknown declarant's statement could be admissible under the Federal corollary to Virgin Islands Rule of Evidence 801(d)(2). *See e.g., Back v. Nestle USA, Inc.*, 649 F.3d 571, 578 (6th Cir. 2012); *Medical Center at Elizabeth Place, LLC v. Atrium Health System*, 817 F.3d 934, 944-45 (6th Cir. 2016); *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 134 (3d Cir. 1997). In *Back*, the Sixth Circuit held that admitting an unknown declarant's statement under this rule is "problematic—but not impossible," and stated that "[t]he crucial question is whether there is evidence that the unidentified declarants were speaking on a matter within the scope of their employment." 649 F.3d at 578. *Back* further held that "[o]utside evidence sufficient to satisfy Rule 801(d)(2)(D)'s scope requirement could come from 'circumstances surrounding the statement, such as the identity of the speaker [or] the context in which the statement was made'" *Id.* (citing Fed. R. Evid. 801 Advisory Committee Notes, 1997).

Viewing the record evidence in the light most favorable to Desmond as the non-moving party, the Court finds that the statements of the unidentified individual with whom Desmond and Cherry spoke after the incident were made by a Haugland employee, concerning a matter within the scope of their employment relationship with Haugland, while that relationship existed. This finding is supported by the parties' agreement that Haugland was brought to St. Croix to assist in

WAPA's reenergization effort following Hurricanes Irma and Maria, and that Haugland's crews were actively engaged in that effort. *See* Motion; Statement of Undisputed Facts, ¶ 3; Opp. SOF, at ¶ 6. Further, the unknown Haugland employee was located by Cherry as part of a Haugland crew working on the electric grid in the Estate Shoys neighborhood. *See* Cherry Affirmation. To the extent this unknown individual spoke with Desmond and Cherry about the restoration of power in Estate Shoys at the time of the incident, those statements were made concerning a matter within the scope of their employment relationship with Haugland, while that relationship existed, and thus are not hearsay per V.I. R. Evid. 801(d)(2)(D).

This ruling, of course, does not preclude Haugland from challenging the veracity of the statements at trial or, for that matter, whether such unknown employee made such statements at all—or even whether the unknown individual actually exists. Those questions are left for the finder of fact, at trial. This ruling is based upon the Court's view of the evidence in the record, in the light most favorable to Plaintiffs as the non-moving party, limited solely to the determination that the proffered evidence is not to be excluded as inadmissible hearsay.

## CONCLUSION

Viewing the evidence in the light most favorable to Plaintiffs, genuine issues of material fact exist to be determined at trial, both as to the question whether Haugland complied with its duty of reasonable care to Desmond, and whether any breach of such a duty by Haugland was a factual and legal cause of damages suffered by Desmond. In light of the foregoing, it is hereby:

ORDERED that Defendant Haugland Energy Group, LLC's Motion for Summary Judgment is DENIED.

DATED: October 5, 2022

DOUGLAS A. BRADY, JUDGE

**ATTEST:**

TAMARA CHARLES

Clerk of the Court

By: _____
Court Clerk Supervisor
10/06/2022



**FILED**
October 06, 2022 04:15 PM
SX-2018-CV-00048
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
District of St. Croix

| | |
|---|---|
| **WILLIAM DESMOND et al,** | Case Number: **SX-2018-CV-00048** |
| **Plaintiff** | Action: **Damages** |
| **v.** | |
| **VIRGIN ISLANDS WATER AND POWER AUTHORITY et al,** | |
| **Defendant.** | |

# NOTICE of ENTRY
## of
## Memorandum Opinion and Order

**To:** Lee J. Rohn, Esq.,        Ryan C. Meade, Esq.
Jennifer Koockogey, Esq.        Douglas L. Capdeville, Esq.,

Please take notice that on October 06, 2022 a(n) **Memorandum Opinion and Order** dated **October 05, 2022** was/were entered by the Clerk in the above-titled matter.

Dated:   **October 06, 2022**                    **Tamara Charles**
                                **Clerk of the Court**

                        By:

                                **Iris Cintron**
                                **Court Clerk Supervisor**